UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 NOV 14 PM 3: 32

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| **BILL LEE** | **CIVIL ACTION NO. 00-0296** |
| | **SECTION "S" (2)**   00-296 |
| **VERSUS** | |
| | **JUDGE LEMMON** |
| **TIDEWATER, INC., DIAMOND** | |
| **OFFSHORE DRILLING, INC. AND** | **MAGISTRATE JUDGE WILKINSON** |
| **SHELL OFFSHORE, INC.** | **JURY DEMAND** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRETRIAL ORDER

1.

### Date of Conference

A pretrial conference was held in this matter on the 16th day of November, 2001, at 10:00

a.m. before Honorable Mary Ann Vial Lemmon.

2.

### Appearance of Counsel

Gary P. Koederitz (#7768)       -   Counsel for plaintiff Bill Lee
and Edward J. Lambert (#1471)

Charles A. Cerise, Jr. (#1755)    -   Counsel for defendant Tidewater Marine, L.L.C.
and Lee C. Reid (#26481)

Arthur A. Crais, Jr. (#4573)     -   Counsel for defendant Shell Offshore Inc.

Patrick O'Keefe (#10186)       -    Counsel for Diamond Offshore Drilling, Inc.

3.

### *Description of the Parties*

Plaintiff Bill Lee is a major individual, citizen of the state of Louisiana, who sustained personal injuries and seeks damages from defendants for those injuries. Plaintiff asserts claims herein against his employer, Tidewater Marine, L.L.C. (originally sued as "Tidewater Marine, Inc."), for negligence pursuant to the Jones Act, 46 U.S.C. §688, and for the unseaworthiness of its vessel and for maintenance and cure benefits pursuant to the General Maritime Law of the United States. Plaintiff has also asserted claims in tort arising under the General Maritime Law against the defendants by whom he was not employed, Diamond Offshore Drilling, Inc. and Shell Offshore, Inc. Tidewater Marine, L.L.C. has filed a cross-claim against Diamond Offshore Drilling, Inc. seeking indemnity and alternatively contribution from Diamond, pursuant to the General Maritime Law.

4.

### *Jurisdiction*

Subject matter jurisdiction is present for this Honorable Court pursuant to the "maritime jurisdiction", 28 U.S.C. §1333, and is not contested by any party.

5.

### *Motions*

There are no motions presently pending.

Tidewater contemplates filing a motion in limine to exclude any testimony of Frank M. Buck, Sr., or alternatively, any testimony regarding Tidewater's alleged violation of 33 C.F.R. 142.4. Tidewater also reserves the right to file additional motions in accordance with the Court's scheduling order.

-2-

Shell and Diamond contemplate filing motions in limine to exclude the testimony of Robert Kubelka as an expert witness in the case and will join in any motion filed by Tidewater to exclude the testimony of Frank Buck as an expert witness or to exclude his testimony or opinions regarding crane operations. Both Shell and Diamond reserve the right to bring other motions in limine or other motions as may be required.

6.

### A.   Brief Summary of Material Facts Claimed by Plaintiff Bill Lee

On January 30, 1999, Bill Lee was employed by Tidewater Marine, L.L.C. aboard an offshore supply vessel, the GULF FLEET 72. Mr. Lee was hired by Tidewater as an ordinary seaman, and was working in the Gulf of Mexico at the time of this accident. He worked aboard the GULF FLEET 72 for about six to eight months until the accident occurred.

At the time of this accident, the GULF FLEET 72 was servicing a semi-submersible offshore drilling vessel, the OCEAN WORKER, owned by defendant Diamond Offshore Drilling, Inc. which was drilling for defendant Shell Offshore, Inc. Mr. Lee's vessel used large diameter mooring lines supplied by the drilling vessel when it was necessary to tie up to the drilling vessel. On the night before the occurrence of the accident, one of those large lines (approximately eight inches in diameter) on the port side parted and it was replaced by Diamond Offshore with a line that was too short. The starboard mooring line that remained in use had an excessively and unnecessarily long "tail". The final result was that the port mooring line was too short and the starboard mooring line had excess line. Mr. Lee estimates that the tail of the starboard mooring line was approximately forty feet long, although ten feet would be sufficient

"tail" for this line. This sketch, not to scale, generally provides the configuration of the starboard stern mooring line involved in this accident:

STARBOARD STERN MOORING LINE



Tail or bitter end                                    line to drilling vessel

eye to place on bitt
of vessel

At the time of the accident, Mr. Lee's crew was attempting to tie the GULF FLEET 72 to the drilling vessel. The port side line, which was short, had been secured. As a result of the port stern mooring line being too short, the captain of the vessel had less room between his vessel and the drilling vessel in which to maneuver. At the time of the accident, the eye of the starboard stern mooring line had been placed over the forward post of the bollards and under the horn. This post is also sometimes referred to as the "bitt". The crew intended to make "figure eights" around the bollards with the remainder of the excess "tail" portion of the line. The excess line was being lowered too quickly by the drilling vessel's crane operator, and Mr. Lee was very concerned that another crew member was going to be struck with the line and that the line would go overboard and be caught in one of the vessel's propellers. Mr. Lee attempted to prevent the excess line from causing either of these problems as it was lowered, and while looking up at the line and walking toward it, unknowingly stepped into the eye of the line which was around the bollard.

The eye of the line was also excessively and unnecessarily long, resulting in a large area of deck between the eye of the line and the bollards. As Mr. Lee walked across the deck in an

-4-

effort to stop the long "tail" of the line from striking his co-employee or falling into the water, the GULF FLEET 72 suddenly moved forward, causing Mr. Lee's foot to be crushed between the eye of the line and the side of the elevated base on which the bollard was mounted.

Plaintiff's employer, Tidewater Marine, L.L.C., was negligent, and its negligence legally caused injuries to Bill Lee. The negligence of Tidewater Marine, L.L.C. includes but is not limited to its failure to provide Bill Lee with a reasonably safe place to work, failing to supply lines which were the proper length, specifically because the port stern line was of insufficient length while the starboard stern line included a tail of excessive length, and the eye of the starboard stern line was excessively large. Additionally, the work place was not reasonably safe because there was inadequate communication between the crane operator aboard the drilling vessel and the members of the crew of the GULF FLEET 72, lack of a proper flag man, the crane operator aboard the drilling vessel was unable to observe plaintiff and other workers on the stern deck of the GULF FLEET 72 during the operation, the crane operator lowered the line too quickly, the captain of the GULF FLEET 72 was unable to observe the deck area where plaintiff and other crew members worked at the time of the accident because of the presence of cargo blocking his vision, the captain of the GULF FLEET 72 improperly moved the vessel forward at the time of the accident, particularly including his movement of the vessel before the tag line was removed from the crane and before the vessel crew has moved away from the mooring line, and other acts and omissions of negligence. The vessel GULF FLEET 72 was unseaworthy for all of the same reasons listed above that Tidewater was negligent and failed to provide plaintiff with a reasonably safe place to work, and that unseaworthiness was a proximate cause of the injuries and damages sustained by plaintiff. Plaintiff has also asserted a claim for maintenance and cure

pursuant to the General Maritime Law, and believes that the only remaining cure presently due is

any outstanding invoice for medical treatment rendered by Thomas S. Guillot, Jr., M.D. and

Lucius J. Doucet, III, M.D.  Plaintiff is entitled to future maintenance and cure in the event any

further medical treatment is needed and until he reaches maximum medical improvement.

Defendant Diamond Offshore Drilling, Inc. was also negligent and its negligence was a

legal and proximate cause of plaintiff's injuries and damages.  The negligence of Diamond

Offshore Drilling, Inc. includes supplying a port stern line to the vessel GULF FLEET 72 which

was of insufficient length, and supplying a starboard stern line to the vessel which included an

excessively and unnecessarily long "tail" and an unnecessarily large eye.  Additionally,

defendant Diamond Offshore Drilling, Inc. was negligent by its crane operator lowering the

starboard stern mooring line too quickly, in allowing its crane operator to continue this operation

without a proper flag man and without sufficient communication with the crew of the GULF

FLEET 72, and while unable to observe plaintiff and other crew members on the stern of the

deck of the GULF FLEET 72.  Defendant Diamond Offshore Drilling, Inc. is liable to plaintiff

for these acts and omissions of negligence pursuant to the General Maritime Law of the United

States.

Defendant Shell Offshore, Inc. was negligent and its negligence was a legal and

proximate cause of plaintiff's injuries and damages because defendant Shell Offshore failed to

adequately supervise and monitor its contractors, Diamond Offshore Drilling, Inc. and Tidewater

Marine, L.L.C., and prohibit both of them from committing the negligent acts and omissions

described above while the GULF FLEET 72 was attempting to moor to the drilling vessel.

Defendant Shell Offshore, Inc. is liable to plaintiff for these acts and omissions of negligence pursuant to the General Maritime Law of the United States.

As a result of the injury described above, Bill Lee has sustained severe injuries including surgeries, amputations, disfigurement, physical pain and suffering, emotional distress, functional disability, anatomical impairment, loss of enjoyment of life, loss of wages, fringe benefits and wage earning capacity, past and future medical expenses, and other damages. Plaintiff is entitled to recover all damages from the defendants herein, the defendants are liable jointly and severally to him, and plaintiff is entitled to interest from defendants for all damages from the date of the accident until paid, or from such other alternative date as the trier of fact and/or the Court may find.

**B.** *Brief Summary of Material Facts Claimed by Defendant Tidewater Marine, L.L.C.*

On January 31, 1999, Bill Lee was injured while working as an able-bodied seaman for Tidewater Marine, L.L.C. aboard the M/V GULF FLEET 72. At approximately 0900 hours, Lee and Ron Lary, an oiler, went to the stern deck of the vessel to secure mooring lines from a drilling rig, owned by Diamond Offshore, to the vessel's stern bitts. It was a sunny day with calm seas. Lee and Lary secured one mooring line to the port stern bitt, then moved to perform the same task at the starboard stern bitt. After the eye of the mooring line was around the forward post of the starboard bitt, Lee, ignoring the instructions of Lary and disregarding his training and company rules, placed his foot in the eye of the mooring line that had just been placed over the starboard stern bitt. As the vessel moved forward, Lee's foot was trapped between the bitt and the mooring line. Lee filed this action against Tidewater, Diamond

Offshore and Shell Offshore, Inc. Tidewater filed a cross-claim against Diamond Offshore to recover wages, advances, maintenance and cure, and other sums paid to or on behalf of Lee.

Lee's accident was caused by his failure to stay in position, his failure to hear and/or listen to the instructions, reprimands, and warnings of his fellow crewmembers, and his failure to use common sense and follow company rules. Lee failed to hear warnings given to him because he did not wear his hearing aids as he had been admonished to do previously.

Lee is a well-trained and experienced marine worker who should have been able to watch for his own safety and avoid such an accident. Lee's marine experience started in 1959, when he enlisted in the U.S. Navy. In 1986, he joined the U.S. Coast Guard Auxiliary where he was a marlin spike instructor. He obtained a 25-ton master's license and later went on to work for Tidewater in March 1998. At Tidewater he attended a one-week safety school. The safety school covered practice and safety, among other topics. In June 1998, Lee attended a two-day AB school where was discussed and practiced. During those sessions, Lee was trained not to place any part of his body between a line and a bitt or other pinch point, and he was warned to be careful of the bight of a line. Lee was properly trained to perform the tasks undertaken, and he knew of the job hazards.

The crew of the M/V GULF FLEET 72 performed their jobs in a proper manner, were competent and adequate in number. The M/V GULF FLEET was also in proper working order, with proper equipment aboard. Tidewater had adequately prepared Lee for the job, gave him warnings and instructions to keep him safe, provided a competent crew and adequate equipment and undertook the positioning of the vessel in safe, calm seas. All of those precautions were of no consequence because of Lee's superseding fault. Tidewater denies any fault.

Tidewater has a cross-claim pending against Diamond Offshore. If Diamond Offshore is found to be at fault, Tidewater is entitled to recover payments made to or on behalf of Lee, and those to be made to or on behalf of Lee, for unearned wages, medical expenses, maintenance, light duty wages, mileage expenses, and any other expenses related to Lee's accident from Diamond Offshore. The payments made by Tidewater serve to reduce or extinguish the damages claimed by Lee.

### C. Brief Summary of Material Facts Claimed by Defendants Shell Offshore Inc. and Diamond Offshore Drilling, Inc.

Shell entered into a contract for vessel services with Tidewater pursuant to which Tidewater furnished the vessel, M/V GULF FLEET 72, which was in effect on January 31, 1999. In the agreement, Shell did not retain any right to control the operations of the vessel; rather, the operations of the vessel were left solely and exclusively to the discretion of the captain.

Shell and Diamond also entered into a drilling agreement for the Diamond Rig, OCEAN WORKER, which was in effect on January 31, 1999. Pursuant to that agreement, Diamond is an independent contractor, and Shell retains no right to control the operations of the work. The drilling agreement also contains an indemnity provision which obligates Shell to indemnify Diamond for suits for personal injury brought by employees of sub-contractors of Shell. Shell has agreed to indemnify and defend Diamond in this suit.

On the day the incident occurred, no Shell employee had any direct involvement when M/V GULF FLEET 72 was tying up to the rig OCEAN WORKER. The crane was operated by Kenny Cliburn, an employee of Diamond; he was assisted by Cecil Zito, also a Diamond employee. There is no evidence that Shell controlled any of the operations of the crane operator or his assistant. There is

also no evidence that James Girard, the master of M/V GULF FLEET 72, was under the control of the

Shell representative on the rig, John Guyett. There was no employee of Shell on M/V GULF FLEET

72.

On January 31, 1999, Bill Lee, an Able Bodied Seaman on M/V GULF FLEET 72 was ordered

along with Ron Lary, the Oiler, to secure mooring lines from the OCEAN WORKER to M/V GULF

FLEET 72. It was 9:00 a.m. and the seas were calm. Mr. Cliburn lowered the port mooring line to the

vessel. According to Mr. Lary, who is no longer employed by Tidewater, Mr. Lee was the signal man

for the crane operator. Mr. Lary successfully secured the port mooring line to the port stern bit.

Then, he moved over to the starboard stern bit. The crane operator lowered the mooring line to

the vessel. Mr. Lary looped the eye of the line over the starboard stern bitt and told Mr. Lee to stay out

of the way. Mr. Lary stated that a tail from the line was in the water and he tried to reach it but was

unable to; and he backed away from the line as the vessel moved forward to tighten the line and secure

itself. Mr. Lary stated he told Mr. Lee to stay out of the way. Mr. Lee stepped in front of Mr. Lary and

in so doing stepped inside the eye of the line with his foot between the line and the bit. Mr. Lary stated

he yelled several times to Mr. Lee to get his foot out but, because Mr. Lee did not wear his hearing aid,

he was unable to hear him. Mr. Lee's foot was crushed between the line and the bit.

Mr. Lee was an experienced mariner dating to 1959 having enlisted in the U.S. Navy and having

operated vessels in the Chesapeake Bay Potomac area. He had a Master's license up to 25 tons and in

1986 enlisted in the U.S. Coast Guard Auxiliary as a marlin spike instructor. He went to work for

Tidewater in 1998 and attended marine safety school prior to working on Tidewater vessels.

As Mr. Lee was the signal man for the crane operator, he should have stopped the operation if

he thought the crane operator was not properly following his signals. According to Mr. Cliburn, the

crane was released before the incident occurred. The vessel would not apply tension to the line if the

crane were still attached to the mooring line. Mr. Lee placed himself in harm's way despite his co-

employee's attempts to get him to extricate himself from a hazardous situation. Mr. Lee's claim that

the eye of the line was "too big" is not a causal factor. First, a seaman should know where his feet are

at all times to avoid pinch points. Second, if crewmen had to struggle to fit an eye over a bit, their

hands would be at greater risk of serious injury. Third, he ignored the admonitions of his coworker to

stay clear of the line.

Further, his contentions that one mooring line was "too short," also lacks any causal connection

to the incident. If that were the case, it is inconceivable that the captain of the vessel would moor it to a

rig at an angle placing his vessel and the rig at risk.

Mr. Lee has reached maximum medical cure on October 2, 2001. He is above average

intelligence and has transferable skills.

7.

### *Uncontested Facts*

A)    Lee was hired as a deckhand by Tidewater Marine, L.L.C. and attended a one-week

safety school, which covered linehandling practice and safety, among other subjects, in

March 1998.

B)    In June 1998, Lee attended a two-day AB school, where linehandling, among other

subjects, was discussed and practiced.

C)    In those Tidewater training courses, Lee was trained not to place any part of his body

between a line and a bitt or other pinch point and was warned to be careful of the bight

of a line, among other things.

D)    Tidewater has paid medical expenses of $94,647.03 on behalf of Lee, through November 5, 2001.

E)    Tidewater has paid unearned wages of $76,576.59 to Lee.

F)    Tidewater has paid $2,627.02 in mileage reimbursement to Lee.

G)    Tidewater has paid $321.10 in miscellaneous expenses to Lee.

H)    Tidewater has paid $6,459.00 in light duty wages to Lee.

I)    On January 31, 1999, the M/V GULF FLEET 72 was operated by Tidewater Marine, L.L.C.

J)    Tidewater Inc. does not and has not owned, operated or controlled the M/V GULF FLEET 72 and never employed Lee.

K)    Lee reached maximum medical cure at least by October 2, 2001.

L)    At the time of this accident, Bill Lee was a "seaman" and member of the crew of the M/V GULF FLEET 72, for purposes of the Jones Act, 46 U.S.C. §688, and the General Maritime Law of the United States.

M)    Diamond does not and has not owned or operated the M/V GULF FLEET 72 and never employed Lee.

N)    Shell does not and has not owned or operated the M/V GULF FLEET 72 and never employed Lee.

O)    M/V GULF FLEET 72 was operating pursuant to a master service agreement between Shell and Tidewater.

P)    The rig, OCEAN WORKER, was operating pursuant to a Master Drilling Agreement between Shell Offshore Inc. and Diamond Offshore Company.

-12-

Q)    Kenny Cliburn was qualified as a crane operator on January 31, 1999.

R)    Mr. Lee had a master's license to operate vessels of 25 tons.

8.

### Contested Issues of Fact

A)    The cause, nature and extent of Lee's accident and injuries.

B)    Whether Lee failed to exercise proper care for his own safety by failing to observe what he should have observed, failing to perform his job properly, failing to shut down the operation, failing to use common sense, and other acts of negligence to be proved at trial.

C)    Whether Lee ignored the instructions of Ron Lary and moved out of his designated position while mooring the M/V GULF FLEET 72 on January 31, 1999.

D)    Whether Lee failed to wear his hearing aids while mooring the M/V GULF FLEET 72 on January 31, 1999.

E)    Whether Lee failed to hear or listen to the warnings given to him by Ron Lary to remove his foot from the eye of the mooring line.

F)    Whether Lee disregarded his training, warnings of others, and reprimands and failed to be aware and avoid placing his foot in a pinch point.

G )    Whether Lee's injuries were caused by the negligence and/or fault of third parties for whom Tidewater, Shell or Diamond are not responsible.

H)    Whether Lee has any potential economic loss, and if so, how much.

I)    Whether the incident in this suit has had any impact on Lee's ability to work, and if so, to what degree.

J)    Whether Lee has mitigated his damages.

K)    Lee's medical history and treatment.

L)    Whether the medical charges of Dr. Thomas Guillot and Dr. Lucius Doucet, III are reasonable in light of the procedures performed.

M)    The nature of work Lee can perform and the pay for such work..

N)    Whether defendant Tidewater Marine, L.L.C. was negligent, and in particular the following material facts and circumstances:

    1)    Whether defendant Tidewater Marine, L.L.C. failed to provide plaintiff Bill Lee with a reasonably safe place to work;

    2)    Whether the port stern line used to moor the GULF FLEET 72 to the drilling vessel was too short;

    3)    Whether the starboard stern line used to moor the GULF FLEET 72 to the drilling vessel included an excessively long "tail", or was otherwise too long;

    4)    Whether that same starboard stern line included an excessively large "eye";

    5)    Whether Tidewater Marine, Inc. was negligent in continuing this operation when the Diamond Offshore Drilling crane operator on the drilling vessel was unable to observe the Tidewater crew members on the stern deck of the vessel during the operation;

    6)    Whether Tidewater Marine, Inc. was negligent in continuing this operation when the Diamond Offshore Drilling crane operator on the drilling vessel did not have a proper flag man or adequate communication with the crew of the Tidewater vessel;

7) Whether Tidewater Marine, L.L.C. was negligent in continuing this operation while the crane operator lowered the starboard stern mooring line too quickly;

8) Whether the captain of the GULF FLEET 72 should have proceeded with the operation during which this accident occurred when he was unable to see plaintiff and other crew members on the stern deck of his vessel because of the presence of cargo;

9) Whether the captain of the GULF FLEET 72 moved the vessel forward without warning to the crew members on the stern deck and when he should not have moved;

10) Whether the captain of the GULF FLEET 72 should not have moved the GULF FLEET 72 when the tag line had not yet been removed from the crane and the GULF FLEET 72 crew was still in the area of the mooring line.

O) Whether the GULF FLEET 72 was unseaworthy at the time of the accident alleged herein, for all of the same reasons alleged above, specifically including the vessel's use of a port stern mooring line which was of inadequate length, and a starboard stern mooring line which included an excessively long "tail" and an unnecessarily large "eye".

P) Whether defendant Diamond Offshore Drilling, Inc. was negligent, and in particular the following material facts and circumstances:

1) Whether the port stern line supplied to the GULF FLEET 72 to the drilling vessel was too short;

2) Whether the starboard stern line supplied to the GULF FLEET 72 to the drilling vessel included an excessively long "tail", or was otherwise too long;

-15-

3)     Whether that same starboard stern line included an excessively large "eye";

4)     Whether Diamond Offshore Drilling, Inc. was negligent in engaging in this crane operation when its crane operator on the drilling vessel was unable to observe the Tidewater crew members on the stern deck of the GULF FLEET 72 during the operation;

5)     Whether Diamond Offshore Drilling, Inc. was negligent in engaging in this crane operation when its crane operator on the drilling vessel did not have a proper flag man or adequate communication with the crew of the GULF FLEET 72;

6)     Whether Diamond Offshore Drilling, Inc. was negligent because its crane operator lowered the starboard stern mooring line too quickly.

Q)     Whether defendant Shell Offshore, Inc. was negligent, and in particular the following material facts and circumstances:

1)     Whether defendant Shell Offshore, Inc. failed to adequately supervise and monitor its contractor, Diamond Offshore Drilling, Inc.;

2)     Whether defendant Shell Offshore, Inc. failed to adequately supervise and monitor its contractor, Tidewater Marine, L.L.C.

R)     Whether plaintiff is entitled to additional "cure" benefits, including charges of Dr. Thomas S. Guillot, Jr. and Dr. Lucius J. Doucet, III.

S)     The amount of general damages sustained by Bill Lee.

T)     Whether plaintiff is entitled to pre-judgment interest and, if so, the date from which pre-judgment interest shall accrue as to each defendant, and the rate of interest to be applied.

-16-

U)    The nature and extent of personal injuries sustained by Bill Lee, including but not

limited to whether he has suffered amputation, disfigurement, physical pain and

suffering, emotional distress, functional disability, anatomical impairment, loss of

enjoyment of life, loss of wages, fringe benefits and wage earning capacity, past and

future medical expenses, and other damages, and whether his disability resulting from

partial amputation of one foot includes inability to climb, walk long distances, stand on

his feet for extended periods, avoiding extreme weather conditions, etc.

V)    Whether Bill Lee is disabled from employment or, if not, the date on which he could

have performed any employment and the wage he could earn, if any.

W)    The amount of special damages to which Bill Lee is entitled, including but not limited to

the amount of lost wages, which plaintiff believes total between $110,746.00 and

$155,736.00 depending on the number of hours he is able to perform work per week, if

any.

X)    The amount of past medical expenses owed to or on behalf of plaintiff, presently

approximately $20,000.00.

Y)    The wage rate plaintiff would have received in the event the accident had not occurred;

specifically, whether his wage would have increased from $115.00 per day to $125.00

per day, for a 240-day year as of July 1, 1999, and whether Bill Lee would have earned

$150.00 per day for a 240-day year beginning April 30, 1999 if the accident had not

occurred.

Z)    Whether the weather and seas on the day of the accident were calm.

-17-

AA)    The number of days per year Bill Lee would be employed by Tidewater Marine, L.L.C. if the accident had not occurred, and the daily rate of pay he would have received.

BB)    Whether Mr. Lee's failure to wear his hearing aid was a cause of the incident.

CC)    Whether the size of the eye in the line was a cause of the incident.

DD)    Whether the length of the tail of the line was a cause of the incident.

EE)    Whether the mooring lines were of different lengths and whether this was a proximate cause of the incident.

FF)    Whether Diamond Offshore Drilling, Inc. or Shell ever controlled the M/V GULF FLEET 72.

GG)    Whether Shell ever controlled the rig OCEAN WORKER and whether Shell ever controlled the details of the work of Kenny Cliburn or Cecil Zito.

HH)    Whether and how on January 31, 1999, Mr. Lee's right foot was placed within the eye of a mooring line that had just been placed over the starboard stern bitt of the M/V GULF FLEET 72.

II)    All issues of fact implicit in the foregoing summary of facts.

9.

### *Contested Issues of Law*

A)    All issues of the law implicit to the foregoing contested and uncontested material facts and summary of facts.

B)    Whether a third party was negligent and, if so, whether such negligence was the cause of Lee's injuries.

C)   Whether Lee is entitled to recover any damages as a matter of law against Tidewater, Shell or Diamond

D)   Whether Lee was comparatively negligent and the amount or percentage of such negligence.

E)   Whether Lee was solely at fault for his injuries.

F)   Whether Tidewater is entitled to limit its liability if it is found at fault.

G)   Whether Tidewater, Shell or Diamond owed any legal duty to Mr. Lee under the circumstances.

H)   Whether Tidewater, Shell or Diamond breached any duty to Lee.

I)   Whether Lee has failed to mitigate his damages.

J)   Whether Lee is entitled to recover prejudgment interest against Tidewater, Shell or Diamond if he makes any recovery.

K)   Whether Lee's negligence was a superseding, intervening cause of his injuries and damages.

L)   Whether Tidewater is entitled to recover from Diamond Offshore the unearned wages, medical expenses, maintenance, light duty wages, mileage expenses, and any other expenses it paid in relation to Lee's accident.

M)   Whether the payments made by Tidewater to or on behalf of Lee serve to reduce or extinguish the damages claimed by Lee.

N)   Whether Frank M. Buck should be allowed to testify at trial.

O)   Whether Robert Kubelka should be allowed to testify at trial.

P)      Whether plaintiff is entitled to pre-judgment interest and, if so, the date from which pre-judgment interest shall accrue as to each defendant, and the rate of interest to be applied.

Q)      Whether Shell was negligent to cause Mr. Lee's injury.

R)      Whether Diamond was negligent to cause Mr. Lee's injury.

S)      Whether any payments by Tidewater to Mr. Lee are a collateral source.

T)      All Issues of law implicit in the contested issues of fact.

10.

*Exhibits*

**Plaintiff may offer the following exhibits:**

A)      Plaintiff's income tax returns and earnings records as an employee of Tidewater Marine, L.L.C.;

B)      Unpaid invoices for medical treatment, specifically including those of Dr. Thomas S. Guillot, Jr. and Dr. Lucius J. Doucet, III;

C)      Photographs of plaintiff's foot taken on various dates; *(Defendants may object to these exhibits based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

D)      Photographs of the M/V GULF FLEET 72;

E)      Photographs of the OCEAN WORKER;

F)      Contracts between Tidewater Marine, L.L.C. and Diamond Offshore Drilling, Inc. and Shell Offshore, Inc.;

G)   Transcripts of recorded statements of any witnesses listed herein; *(Defendants may object to these exhibits based upon Rules 801-802 of the Federal Rules of Evidence, and on other grounds.)*

H)   Vessel specification sheet and drawings of M/V GULF FLEET 72;

I)   Vessel logs of the M/V GULF FLEET 72 for the accident date;

J)   All records or reports of Dr. Thomas S. Guillot, Jr. regarding reasonableness of charges for medical treatment by Drs. Guillot and Doucet;

K)   All hospital and medical records of Bill Lee subsequent to the date of the accident;

L)   All accident or incident reports describing this accident, including those of all defendants;

M)   Life expectancy and worklife expectancy tables, United States Department of Labor; *(Defendants may object to these exhibits based upon Articles 401-403 of the Federal Rules of Evidence, and on other grounds.)*

N)   Copy of any statutes or regulations applicable to the claims asserted by plaintiff, including but not limited to 33 C.F.R. 142 and 142.4, and 46 C.F.R. 109.521, *et seq.*; *(Defendants may object to these exhibits based upon Articles 401-403 of the Federal Rules of Evidence, and on other grounds.  Additionally, defendants submit that statutes are inadmissible, since the law is to be provided to the jury by instructions given by the Court.)*

O)   Copy of API Recommended Practice for Operation and Maintenance of Offshore Cranes; *(Defendants may object to these exhibits based upon Articles 401-403 of the Federal Rules of Evidence, and on other grounds.  Additionally, defendants submit that*

-21-

*statutes are inadmissible, since the law is to be provided to the jury by instructions given by the Court.)*

P)    Diamond Offshore Drilling, Inc. safety/training manual;

Q)    Deposition of any person unavailable for trial or admitted by agreement;

R)    Sample prosthesis and shoes recommended for use by Bill Lee;

S)    Sample portion of similar mooring line;  *(Defendants reserve the right to object to this exhibit until trial and depending upon the use to be made of the exhibit.  Defendants may object to this exhibit based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

T)    Any pleading filed by any party.  *(Defendants may object to these exhibits based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

U)    Any exhibit listed or offered by any other party.

**Defendant Tidewater Marine, L.L.C. may introduce the following exhibits:**

A)    Transcript of plaintiff's recorded statement;

B)    Excerpts of plaintiff's personnel file with Tidewater Marine, L.L.C.;

C)    Maintenance and cure, unearned wages, light duty wages, mileage expenses, advances and miscellaneous expenses printout of payments for Lee; *(Plaintiff may object to these exhibits based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

D)    Tidewater weekly vessel and environmental meeting report dated 09/06/98;

E)    Photographs of M/V GULF FLEET 72 ;

F)    Vessel specification sheet and drawing of M/V GULF FLEET 72;

G)    Tidewater sea time report for Lee;

H)    Master's smooth log for M/V GULF FLEET 72 dated 1/31/99;

I)    Master's rough log for M/V GULF FLEET 72 dated 1/31/99;

J)    Excerpts of Tidewater Safe Operations System Manual;

K)    Lee's answers to Shell Offshore, Inc.'s interrogatories 2 and 4;

L)    Compensation schedule of reasonable charges for various medical procedures;

       *(Plaintiff may object to this exhibit based upon Rules 401-403 of the Federal Rules of*

       *Evidence, and on other grounds.)*

M)    Any other documents listing reasonable charges for procedures performed by Dr.

       Guillot;   *(Plaintiff may object to this exhibit based upon Rules 401-403 of the Federal*

       *Rules of Evidence, and on other grounds.)*

N)    Depositions of unavailable witnesses;

O)    Any exhibit listed by any other party.

**Shell and Diamond may introduce the following exhibits:**

A)    Payroll and other earnings records of Bill Lee as an employee of Tidewater Marine,

       L.L.C. and/or Tidewater, Inc. and any other prior employer;

B)    All accident or incident reports;   *(Plaintiff may object to these exhibits based upon*

       *Rules 801-802 of the Federal Rules of Evidence, and on other grounds.)*

C)    Photographs of the rig, crane, ropes, and vessel involved in the accident;

D)    Personnel records of plaintiff from any employer;   *(Plaintiff may object to these exhibits*

       *based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

E)    Any and all applicable Coast Guard regulations; *(Plaintiff may object to these exhibits based upon Articles 401-403 of the Federal Rules of Evidence, and on other grounds. Additionally, plaintiff submits that regulations are inadmissible, since the law is to be provided to the jury by instructions given by the Court.)*

F)    Any and all x-ray films or other diagnostic studies regarding injuries to Bill Lee;

G)    Logs of M/V GULF FLEET 72;

H)    Any and all medical records and reports pertaining to Bill Lee; *(Plaintiff may object to these exhibits based upon Rules 401-403 and 801-802 of the Federal Rules of Evidence, and on other grounds.)*

I)    Shell contract with Tidewater for M/V GULF FLEET 72;

J)    Deposition of any witness unavailable for trial;

K)    All discovery pleadings propounded to plaintiff and responses thereto; *(Plaintiff may object to portions of these exhibits based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

L)    Shell contract with Diamond for the rig OCEAN WORKER;

M)    Any Coast Guard reports pertaining to the incident in question; *(Plaintiff may object to these exhibits based upon Rules 801-802 of the Federal Rules of Evidence, and on other grounds.)*

N)    Plaintiff's Complaint;

O)    Diagram of an eye on the mooring line; *(Plaintiff may object to this exhibit based upon Rules 401-403 of the Federal Rules of Evidence, and on other grounds.)*

P)    Photograph of an eye on the mooring line;

-24-

Q)    A section of mooring line;

R)    Sections of training manuals and Coast Guard manuals on marine safety and lines on

vessels; *(Plaintiff may object to these exhibits based upon Rules 401-403 and 801-802 of*

*the Federal Rules of Evidence, and on other grounds.)*

S)    Tidewater report of the incident;

T)    Any exhibit listed or offered by any other party.

11.

### *Deposition Testimony*

Deposition testimony of Connie Bousquet.

All parties reserve the right to offer deposition testimony into evidence of any witness

unavailable for trial or beyond the subpoena power of the Court, or otherwise admissible pursuant to

the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

12.

### *Charts, Graphs, Etc.*

All parties reserve the right to use enlarged exhibits, charts, blackboards or sketchpads,

diagrams of the eye of a mooring line, photos of the eye of a mooring line, photos of the bitt on M/V

GULF FLEET 72, diagrams and photos of M/V GULF FLEET 72 and rig OCEAN WORKER, and a

section of mooring line in opening statement or closing argument.

13.

### *Witnesses*

**Plaintiff will call the following witnesses:**

A)    Bill Lee
      308 E. Weber Street
      Gonzales, Louisiana   70737

      Plaintiff; will testify regarding job duties, circumstances of accident, wages, injuries and
      damages.

B)    Yvonne Lee
      308 E. Weber Street
      Gonzales, Louisiana   70737

      Plaintiff's spouse; will testify regarding treatment of plaintiff's injuries, care of plaintiff,
      condition of plaintiff, damages sustained by plaintiff.

**Plaintiff may call the following witnesses:**

A)    James Girard
      P. O. Box 1107
      Cut Off, Louisiana   70346

      May testify regarding facts of accident, mooring line arrangements, statements by
      anyone, practices and procedures of Tidewater, wages paid to deckhands, job
      duties, communications between GULF FLEET 72 and crane operator or other rig
      personnel, lengths and configurations of mooring lines, location of GULF FLEET 72
      with reference to the OCEAN WORKER at time of the accident, etc.

B)    Frank Waterman
      20825 Holmes Drive
      Zachary, Louisiana   70791

      May testify regarding facts of accident, mooring line arrangements, statements by
      anyone, practices and procedures of Tidewater, wages paid to deckhands, job
      duties, communications between GULF FLEET 72 and crane operator or other rig
      personnel, lengths and configurations of mooring lines, location of GULF FLEET 72
      with reference to the OCEAN WORKER at time of the accident, etc.

C)    Neal Deprima
      Morgan City, Louisiana

May testify regarding facts of accident, mooring line arrangements, statements by anyone, practices and procedures of Tidewater, wages paid to deckhands, job duties, communications between GULF FLEET 72 and crane operator or other rig personnel, lengths and configurations of mooring lines, location of GULF FLEET 72 with reference to the OCEAN WORKER at time of the accident, etc.

D)    Ron Lary
      217 Duffy Lee Road
      Monroe, Louisiana 71202

May testify regarding facts of accident, mooring line arrangements, statements by anyone, practices and procedures of Tidewater, wages paid to deckhands, job duties, communications between GULF FLEET 72 and crane operator or other rig personnel, lengths and configurations of mooring lines, location of GULF FLEET 72 with reference to the OCEAN WORKER at time of the accident, etc.

E)    Dean Brandow
      1508 Ellzy Street
      Morgan City, Louisiana 70380

May testify regarding facts of accident, mooring line arrangements, statements by anyone, practices and procedures of Tidewater, wages paid to deckhands, job duties, communications between GULF FLEET 72 and crane operator or other rig personnel, lengths and configurations of mooring lines, location of GULF FLEET 72 with reference to the OCEAN WORKER at time of the accident, etc.

F)    Cecil Zito
      651 Fire Tower
      Colfax, Louisiana 71417

Fact witness; Diamond Offshore Drilling employee. May testify regarding circumstances of accident, mooring lines supplied for use by GULF FLEET 72 at the time of the accident, Diamond safety policy, etc.

G)    Kenny Cliburn
      3957 Front Street
      Silver Creek, Mississippi 39663

Fact witness; Shell Offshore, Inc. employee. May testify regarding company policies and procedures, supervision of contractors, mooring lines supplied for use by GULF FLEET 72, etc.

-27-

H)    Dr. A. Delmar Walker, Jr.
      869 Verret S.
      Houma, Louisiana   70361

      Expert medical witness regarding history, complaints, examinations, testing, diagnosis,
      treatment, prognosis, causation, cost of treatment, pain and suffering, functional
      restrictions, disfigurement, impairment, etc.

I)    Dr. Thomas S. Guillot, Jr.
      7777 Hennessy Boulevard
      Suite 6001
      Baton Rouge, Louisiana 70808

      Expert medical witness regarding history, complaints, examinations, testing, diagnosis,
      treatment, prognosis, causation, cost of treatment, pain and suffering, functional
      restrictions, disfigurement, impairment, etc.

J)    Dr. Lucius J. Doucet, III
      7777 Hennessy Boulevard
      Suite 6001
      Baton Rouge, Louisiana 70808

      Expert medical witness regarding history, complaints, examinations, testing, diagnosis,
      treatment, prognosis, causation, cost of treatment, pain and suffering, functional
      restrictions, disfigurement, impairment, etc.

K)    Dr. Gary Cox
      8425 Cumberland Place
      Baton Rouge, Louisiana   70806

      Expert medical witness regarding history, complaints, examinations, testing, diagnosis,
      treatment, prognosis, causation, cost of treatment, pain and suffering, functional
      restrictions, disfigurement, impairment, etc.

L)    Dr. Waybrun J. Hebert, III
      210 New Orleans Boulevard
      Houma, Louisiana   70364

      Expert medical witness regarding history, complaints, examinations, testing, diagnosis,
      treatment, prognosis, causation, cost of treatment, pain and suffering, functional
      restrictions, disfigurement, impairment, etc.

M)    Dr. Melvin G. Bourgeois
      Morgan, City, Louisiana
      Telephone: (318) 384-3355

      May testify regarding pre-employment physical examination of Bill Lee, physical
      requirements of job, etc.

N)    W. Pat Culbertson, Ph.D.
      2107 CEBA Building
      Louisiana State University
      Baton Rouge, Louisiana 70803

      Expert witness; economist. May testify regarding economic loss, life expectancy, work
      life expectancy, etc.

O)    Dr. Larry G. Ferachi
      720 Connell's Park Lane
      Baton Rouge, Louisiana

      Expert medical witness regarding history, complaints, examinations, testing, diagnosis,
      treatment, prognosis, causation, cost of treatment, pain and suffering, functional
      restrictions, disfigurement, impairment, etc.

P)    Henry Lambert
      Lambert's Orthotics and Prosthetics
      236 Wabash Avenue
      Baton Rouge, Louisiana 70806

      Expert witness; prosthesist. May testify regarding cost of prosthesis and shoes,
      frequency prosthesis will need to be replaced, etc.

Q)    Crew members of helicopter who transported
      plaintiff from the accident site

      May testify regarding damages, statements by anyone.

R)    Rig emergency medical technician
      Name unknown at present

      May testify regarding damages, statements by anyone.

S)    Emergency room doctor, Terrebonne General Hospital
      Name unknown at present

-29-

Expert medical witness regarding history, complaints, examinations, testing, diagnosis, treatment, prognosis, causation, cost of treatment, pain and suffering, functional restrictions, disfigurement, impairment, etc.

T)    Joe Tidwell, P.T.
       Alliance Physical Therapy
       Hwy. 44
       Gonzales, Louisiana

       Expert medical witness regarding history, complaints, examinations, testing, diagnosis, treatment, prognosis, causation, cost of treatment, pain and suffering, functional restrictions, disfigurement, impairment, etc.

U)    Bertin Schexnayder,
       311 E. Sanders
       Gonzales, Louisiana

       May testify regarding damages sustained by plaintiff.

V)    Cindy Schexnayder
       311 E. Sanders
       Gonzales, Louisiana

       May testify regarding damages sustained by plaintiff.

W)    J. Robert Kubelka
       231 Murray Hill Drive
       Destrehan, Louisiana 70047

       Expert witness; may testify regarding operations of offshore platforms and rigs, crane operation, vessels, use of mooring lines, etc.

X)    Frank Buck
       2737 Chenier Street
       Marrero, Louisiana 70072-6623

       Expert witness; may testify regarding vessel operations, crane operations, use of mooring lines, etc.

Y)    John Guyett
       3103 Brittany Place
       Pensacola, Florida  32504

Representative of defendant Shell Offshore. May testify regarding circumstances of accident, supervision of Shell contractors, etc.

Z)    John C. Duplantier
      601 Poydras Street
      Suite 1900
      New Orleans, Louisiana   70130

      Representative of Tidewater. May testify regarding employment of plaintiff, company policies, wages paid, maintenance and cure payments or denials, authentication of documents, etc.

AA)   Any witness listed or called by any other party.

**Defendant Tidewater Marine, L.L.C. will call the following witnesses:**

A)    James Girard
      Post Office Box 1107
      Cut Off, Louisiana 70345

      Master of the M/V GULF FLEET 72 who will testify regarding plaintiff's job description, the movement of the vessel, the weather conditions on the day of plaintiff's accident, proper safety and linehandling procedures, plaintiff's job duties, facts concerning accident, reprimands of plaintiff, prior dealings with plaintiff, and any other relevant facts regarding the witness' employment with Tidewater and plaintiff's injuries.

B)    Ronald Lary
      217 Duffy Lee Road
      Monroe, Louisiana 71202
      Live or by deposition

      Oiler of the M/V GULF FLEET 72 who will testify regarding the mooring of the vessel, plaintiff's duties during mooring, plaintiff's failure to wear his hearing aids at the time of the accident, plaintiff's failure to hear his warnings, facts concerning accident, and any other relevant facts regarding the witness' employment with Tidewater and plaintiff's injuries.

C)    Frank Waterman
      20825 Holmes Drive
      Zachary, Louisiana

Mate of the M/V GULF FLEET 72 who will testify regarding plaintiff's job description, plaintiff's duties during mooring, proper safety and linehandling procedures, plaintiff's work aboard the vessel and any other relevant facts regarding the witness' employment with Tidewater and plaintiff's injuries.

**Defendant Tidewater Marine, L.L.C. may call the following witnesses:**

A)      John C. Duplantier
        Tidewater, Inc.
        601 Poydras Street, Suite 1900
        New Orleans, LA 70130

        Tidewater representative who may testify regarding corporate documents, plaintiff's wages, advances, expenses, and maintenance and cure issues.

B)      Frank Finane
        Tidewater Marine, L.L.C.
        200 Ford Industrial Road
        Amelia, LA  70340

        Tidewater representative who may testify about his dealings with plaintiff, wages, advances, expenses and maintenance and cure issues.

C)      Don J. Green
        8876 Gulf Freeway
        Suite 120
        Houston, Texas 77017

        Maritime liability expert who may testify in accordance with the available evidence as such relates to plaintiff's accident, the condition of the vessel and surrounding area, proper safety and  procedures and other liability issues expected to be covered by a liability expert.

D)      Connie Bousquet, R.N.
        Medical Audit Consultants, Inc.
        P.O. Box 4238
        New Orleans, La. 70178-4238
        504-669-3908

        Expert medical auditor who may testify by deposition regarding the medical charges of Dr. Thomas Guillot and Dr. Lucius Doucet III, reasonable charges, usual and customary charges and other such relevant testimony expected of an expert medical auditor.

E)    Kenneth J. Boudreaux, Ph.D. or
      Dan M. Cliffe, CPA or
      J. Stuart Wood, Ph.D.
      1424 Bordeaux Street
      New Orleans, LA 70115
      504-895-8741

      Expert economist/CPA who may testify in accordance with the available evidence
      as such relates to plaintiff's alleged economic damages and any other relevant
      testimony expected of an expert economist.

F)    Dean Brandow
      1508 Ellzy Street
      Morgan City, Louisiana 70380

      Engineer of the M/V GULF FLEET 72 may testify regarding proper mooring
      procedures, proper safety and linehandling procedures, plaintiff's work aboard the
      vessel and any other relevant facts regarding the witness' employment with
      Tidewater and plaintiff's injuries.

G)    Margo Hoffman or
      Judith Lide
      American Rehabilitation
      Consultant Services, Inc.
      The Founder's Building
      1150 Robert Blvd., Suite 300
      Slidell, LA 70458

      Expert vocational rehabilitation consultant who may testify about jobs available to
      plaintiff, pay for the jobs, transferable skills, and any other testimony expected of a
      vocational rehabilitation consultant.

H)    Jerrold K. Marks
      J K Marks & Associates
      P. O. Box 579
      Arnaudville, LA 70512-0579

      Investigator who may testify about statement given by plaintiff.

I)    Robert Arceneaux
      Tidewater Marine, L.L.C.
      200 Ford Industrial Road
      Amelia, LA 70340

-33-

Tidewater safety director who may testify about employee training, safety policies, proper linehandling procedures, and any other such relevant testimony.

J)    Charles Portier
      Tidewater Marine, L.L.C.
      200 Ford Industrial Road
      Amelia, LA  70340

Operations manager of supply boat division who may testify about current economic conditions, pay for employees, promotion procedures, changes in work schedules, plaintiff's claims of promotion and pay increases, and any other such relevant testimony.

K)    Any witness listed by any other party.

**Shell will call the following witnesses:**

A)    John Guyett
      3103 Brittany Place
      Pensacola, FL 32504

Shell representative on OCEAN WORKER regarding his knowledge of the incident, his job duties, relationship with the rig crew.

**Diamond will call the following witnesses:**

A)    Kenny Cliburn
      3957 Front St.
      Silver Creek, MS 39663

Crane Operator on OCEAN WORKER will testify regarding his crane qualifications, experience, events of January 31, 1999, duties of crane operator, mooring vessels, lowering mooring lines from rig to vessel, knowledge of the facts of the incident.

B)    Cecil Zito
      651 Fire Tower Road
      Colfax, LA 71417

Flag man on the rig will testify about his knowledge of the events of January 31, 1999, his duties as flag man, mooring vessels to rig, lowering mooring lines to vessels.

**Shell and Diamond may call the following witnesses:**

-34-

A)      James Girard
        Post Office Box 1107
        Cut Off, Louisiana 70345

        Master of the M/V GULF FLEET 72 who will testify regarding plaintiff's job
        description, the movement of the vessel, the weather conditions on the day of plaintiff's
        accident, proper safety and  linehandling procedures, plaintiff's job duties, facts
        concerning accident, reprimands of plaintiff, prior dealings with plaintiff, and any other
        relevant facts regarding the witness' employment with Tidewater and plaintiff's injuries.

B)      Ronald Lary
        217 Duffy Lee Road
        Monroe, Louisiana 71202
        Live or by deposition

        Oiler of the M/V GULF FLEET 72 who will testify regarding the mooring of the vessel,
        plaintiff's duties during mooring, plaintiff's failure to wear his hearing aids at the time
        of the accident, plaintiff's failure to hear his warnings, facts concerning accident, and
        any other relevant facts regarding the witness' employment with Tidewater and
        plaintiff's injuries.

C)      Frank Waterman
        20825 Holmes Drive
        Zachary, Louisiana

        Mate of the M/V GULF FLEET 72 who will testify regarding plaintiff's job description,
        plaintiff's duties during mooring, proper safety and linehandling procedures, plaintiff's
        work aboard the vessel and any other relevant facts regarding the witness' employment
        with Tidewater and plaintiff's injuries.

D)      John C. Duplantier
        Tidewater, Inc.
        601 Poydras Street, Suite 1900
        New Orleans, LA 70130

        Tidewater representative who may testify regarding corporate documents,
        plaintiff's wages, advances, expenses, and maintenance and cure issues.

E)      Frank Finane
        Tidewater Marine, L.L.C.
        200 Ford Industrial Road
        Amelia, LA  70340

Tidewater representative who may testify about his dealings with plaintiff, wages, advances, expenses and maintenance and cure issues.

F)    Don J. Green
      8876 Gulf Freeway
      Suite 120
      Houston, Texas 77017

      Maritime liability expert who may testify in accordance with the available evidence as such relates to plaintiff's accident, the condition of the vessel and surrounding area, proper safety and procedures and other liability issues expected to be covered by a liability expert.

G)    Connie Bousquet, R.N.
      Medical Audit Consultants, Inc.
      P.O. Box 4238
      New Orleans, La. 70178-4238
      504-669-3908

      Expert medical auditor who may testify by deposition regarding the medical charges of Dr. Thomas Guillot and Dr. Lucius Doucet III, reasonable charges, usual and customary charges and other such relevant testimony expected of an expert medical auditor.

H)    Kenneth J. Boudreaux, Ph.D. or
      Dan M. Cliffe, CPA or
      J. Stuart Wood, Ph.D.
      1424 Bordeaux Street
      New Orleans, LA 70115
      504-895-8741

      Expert economist/CPA who may testify in accordance with the available evidence as such relates to plaintiff's alleged economic damages and any other relevant testimony expected of an expert economist.

I)    Dean Brandow
      1508 Ellzy Street
      Morgan City, Louisiana 70380

      Engineer of the M/V GULF FLEET 72 who may testify regarding proper mooring procedures, proper safety and linehandling procedures, plaintiff's work aboard the vessel and any other relevant facts regarding the witness' employment with Tidewater and plaintiff's injuries.

-36-

**Witness Lists Were Filed In Accordance With Prior Court Orders**.

14.

*Jury or Non-Jury Case*

This is a jury trial.  Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five (5) days prior to the trial date, unless specific leave to the contrary is granted by the Court.

15.

*Separation Issues*

The issue of liability will not be tried separately from that of quantum.

16.

*Other Matters*

The parties do not know of any other matters that may expedite trial.

17.

*Trial Date*

Trial of this matter shall commence on December 10, 2001, at 9:00 a.m.  It is estimated that the trial of this matter will take three (3) days.

18.

*Settlement*

Possibility of settlement of this case was considered.

19.

*Pre-Trial Order*

This Pre-Trial Order has been formulated after conference at which counsel for the prospective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections or additions, prior to signing. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

Respectfully Submitted:

**Edward J. Lambert (#1471)**
Attorney at Law
P.O. Box 88
Gonzales, Louisiana   70707-0088
Telephone: (225) 647-9788

-and-

**KOEDERITZ LAW FIRM, L.L.C.**
8706 Jefferson Highway
Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 928-9111

BY:_____
   **Gary P. Koederitz (#7768)**
   *Counsel for plaintiff Bill Lee*

-38-

**ADAMS AND REESE, L.L.P.**
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234


BY: _____
    **Charles A. Cerise, Jr. (#1755)**
    **Lee C. Reid (#26481)**
    *Counsel for defendant and cross-*
    *claimant Tidewater Marine, L.L.C.*

**ARTHUR A. CRAIS, JR.**
Attorney at Law
701 Poydras Street
1510 One Shell Square
P.O. Box 60193
New Orleans, Louisiana 70130
Telephone: (504) 728-4654


BY: _____
    **Arthur A. Crais, Jr. (#4573)**
    *Counsel for defendant Shell Offshore,*
    *Inc. and defendant and defendant in*
    *cross-claim Diamond Offshore Drilling,*
    *Inc.*

**MONTGOMERY, BARNETT, BROWN**
    **& READ**
Suite 3200
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504)  585-3200


BY: _____
    **Patrick O'Keefe (#10186)**
    *Counsel for defendant and defendant in*
    *cross-claim Diamond Offshore Drilling,*
    *Inc.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

BILL LEE                                       CIVIL ACTION NO. 00-0296

                                               SECTION "S" (2)
VERSUS
                                               JUDGE LEMMON

TIDEWATER, INC., DIAMOND                       MAGISTRATE JUDGE WILKINSON
OFFSHORE DRILLING, INC. AND
SHELL OFFSHORE, INC.                           JURY DEMAND
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## O R D E R

    **IT IS ORDERED** that this cause be set for trial by jury on the _____ day of

_____, _____ at _____ o'clock ____.m.

    New Orleans, Louisiana this _____ day of _____, 2001.


_____
**JUDGE, UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

-40-

# KOEDERITZ LAW FIRM
### A Limited Liability Company
8706 Jefferson Highway
Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 928-9111
Facsimile: (225) 926-7117

Gary P. Koederitz

gary@gklawfirm.com

RECEIVED

NOV 14 2001

U. S. DISTRICT JUDGE
MARY ANN VIAL LEMMON

November 14, 2001

*Via Hand Delivery*

Honorable Mary Ann Vial Lemmon
Judge, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
C406 U.S. Courthouse
500 Camp Street
New Orleans, Louisiana 70130

Re:    ***Bill Lee v. Tidewater, Inc., et al***
Civil Action No. 00-0296; Section S; Magistrate 2

Dear Judge Lemmon:

Enclosed is the original and one copy of Pretrial Order which has been signed by all counsel.

With kindest regards, we remain

Respectfully yours,

KOEDERITZ LAW FIRM

Gary P. Koederitz

GPK/cmc

Enclosure

cc:    Charles A. Cerise, Jr., Esq. (w/encl.)
Arthur A. Crais, Jr., Esq. (w/encl.)
Patrick O'Keefe, Esq. (w/encl.)
Eddie J. Lambert, Esq. (w/encl.)
Mr. Bill Lee (w/encl.)